UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SHARON M. HARRISON,

    Plaintiff,

      v.

OFFICE OF THE ARCHITECT OF THE
CAPITOL,

    Defendant.

**Civil Action No. 09-1364 (CKK)**

**MEMORANDUM OPINION**
(September 1, 2013)

Plaintiff Sharon Harrison, an employee of Defendant the Office of the Architect of the

Capitol, filed suit alleging the Defendant subjected the Plaintiff to a hostile work environment in

violation of the Congressional Accountability Act, 2 U.S.C. § 1301 *et seq.* Presently before the

Court is the Defendant's [32] Motion for Summary Judgment. Upon consideration of the

pleadings, the relevant legal authorities, and the record as a whole, the Court finds the Plaintiff

failed to establish a genuine issue of material fact necessary to defeat summary judgment as to

any of her hostile work environment claims. Accordingly, the Defendant's motion is

GRANTED.

**I. BACKGROUND**

Plaintiff has been employed in the Training and Employee Development Branch of the

Human Resources Management Division of the Architect of the Capitol since 2001. Def.'s Stmt.

¶ 1.[1] The Plaintiff is currently employed as a human resources specialist at the GS-12 level. *Id.*

---

[1] The Court shall refer to Defendant's Statement of Material Facts ("Defs.' Stmt."), or
directly to the record, unless a statement is contradicted by the Plaintiff, in which case the Court

Between 2004 and September 2009, the Plaintiff reported to Stephen Hayleck, the Chief of the Training Branch. *Id.* ¶ 3; Harrison Dep. 12:12-20. Rebecca Tiscione, the Director of Human Resources, served as the Plaintiff's second-line supervisor. *Id.* ¶ 4. David Ferguson, Ms. Tiscione's supervisor, was the Plaintiff's third-line supervisor. *See* Def.'s Ex. A. Mr. Hayleck rated the Plaintiff as "outstanding" on every performance review, and approved cash awards and within-grade increases for the Plaintiff. *Id.* ¶ 5; Pl.'s Ex. 2. In September 2009, Mr. Hayleck resigned from the Office of the Architect of the Capitol to take a position with the National Oceanic and Atmospheric Administration. Def.'s Stmt. ¶ 6; Hayleck Dep. 7:7.

On August 6, 2008, the Plaintiff alleges that Mr. Hayleck approached the Plaintiff's desk and screamed at the Plaintiff while waiving a piece of paper in close proximity to the Plaintiff's face. Harrison Decl. ¶ 2. Mr. Hayleck was upset that the Plaintiff had sent an email to David Ferguson, the Plaintiff's third-line supervisor, regarding a "controversial training request." Def.'s Ex. A (8/7/08 Email S. Hayleck to Pl.). According to Mr. Hayleck, Ms. Tiscione had instructed Mr. Hayleck to contact her before any further contact with Mr. Ferguson about this training request, meaning that the Plaintiff's email "place(d) [Hayleck] and [Tiscione] at risk of being seen as insubordinate regarding this issue." *Id.* Mr. Hayleck informed the Plaintiff that she should consider the incident "verbal counseling" pursuant to Chapter 752 of the Architect of the Capitol's Personnel Manual. *Id.* ¶ 6. Mr. Hayleck did not use profanity or physically touch the Plaintiff, but the Plaintiff contends that "her path to exit was blocked by the physical presence of Chief Hayleck." Def.'s Stmt. ¶ 8; Harrison Decl. ¶ 5. .During his deposition, Mr.

---

may cite to Plaintiff's Response to the Statement of Material Facts ("Pl.'s Resp. Stmt.") where appropriate.

Hayleck described himself as 5'7" tall and approximately 175 pounds.[2]  Hayleck Dep. 24: 18-20.

This "verbal counseling" was memorialized in an August 7, 2008, email from Mr. Hayleck to the

Plaintiff.  Def.'s Stmt. ¶ 7; Def.'s Ex. A.  In the follow-up email to Plaintiff, Mr. Hayleck also

took issue with the fact that during the incident the prior day, the Plaintiff indicated that she

would not follow Mr. Hayleck's instruction to process the training request with only Mr.

Ferguson's signature, but would wait for Ms. Tiscione to return to the office before processing

the request.  Def.'s Ex. A.  The Plaintiff was not otherwise disciplined for sending what Mr.

Hayleck considered to be an inappropriate email.  Def.'s Stmt. ¶ 11.

The Plaintiff subsequently sent an email to her second-line supervisor Rebecca Tiscione

requesting a meeting "to discuss some office issues."  Def.'s Ex. B (8/08/08 Email Pl. to R.

Tiscione); Def.s' Stmt. ¶¶ 13-14.  During the meeting on August 13, 2008, the Plaintiff discussed

the incident with Mr. Hayleck on August 6, and Ms. Tiscione indicated she would investigate the

Plaintiff's allegations.  Def.'s Stmt. ¶¶ 14-15.  After interviewing the other individuals present at

the time of the incident, Ms. Tiscione concluded that "Mr. Hayleck had raised his voice, that he

had a piece of paper in his hand at the time, but it did not, in [her] opinion, rise to the level of

violence in the workplace."  Tiscione Dep. 18:11-22, 37:4-22.  Ms. Tiscione informally

counseled Mr. Hayleck that "he needed to not yell at his employees." *Id.* at 37:15-22.

The Plaintiff alleges that between August 23 and September 30, 2008: (1) Mr. Hayleck

and one of the Plaintiff's co-workers in the Training Division "did not speak to [Plaintiff]," and

Mr. Hayleck would only communicate with the Plaintiff via email; (2) Plaintiff was not informed

of and did not attend any staff meetings; and (3) Plaintiff was "excluded from all normal

communication and information in[] the Training Division."  Harrison Decl. ¶ 44.  However, the

---

[2]  Neither party provided any information regarding the Plaintiff's stature.

Plaintiff is not aware if any staff meetings were actually held during this time period. Harrison Dep. 79:8-12. At some point Mr. Hayleck "required [Plaintiff] to provide notice of [her] whereabouts at all times" by emailing him when she left and returned to the office and keeping a log, but he subsequently asked the Plaintiff to stop notifying him via email. Harrison Decl. ¶ 44(f)-(g). The Plaintiff was also "required" to notify Mr. Hayleck via email when rush forms were placed in his "box," but Mr. Hayleck asked the Plaintiff to stop sending the emails "as he would check the 'box' as he always did." *Id.* ¶ 44(l)-(m). The Plaintiff indicated that when her co-worker in the Training Branch was out of the office, "the workplace door to Chief Hayleck's office was shut." *Id.* ¶ 44(k).

On September 30, 2008, the Plaintiff alleges that on three occasions Mr. Hayleck "blocked [Plaintiff's] my path where [she] couldn't go straight to the door [to exit the office]," forcing the Plaintiff to go "sideways around him and pull[] the door open." Harrison Dep. 67:2-11. Mr. Hayleck did not say anything to the Plaintiff and the Plaintiff was able to leave each time. *Id.* 67:15-23. After visiting the nurse at some point that day, reportedly distressed by the interaction, the Plaintiff left the office and was out on leave until February 19, 2009. Harrison Decl. ¶¶ 52, 117. During this time period, Plaintiff made multiple requests for leave pursuant to the Family and Medical Leave act, for advanced sick leave, and for annual leave. *Id.* ¶¶ 56-108. All of the Plaintiff's requests for leave were granted. Harrison Dep. 86:23-87:1.[3] The Plaintiff was never considered absent without official leave or otherwise disciplined during her absence. Def.'s Stmt. ¶ 26.

Before returning to the office in February 2009, the Plaintiff contacted Ms. Tiscione to

---

[3] It is not clear from the record whether Mr. Hayleck had authority to approve the Plaintiff's requests for leave, or whether Mr. Ferguson was responsible for the approving all of the Plaintiff's requests. *See* Tiscione Dep. 52:7-53:6.

request a six-month temporary assignment outside the Training Division. Harrison Decl. ¶ 110. Upon her return, the Plaintiff was assigned to the Human Resources Management Division and reported directly to Ms. Tiscione. *Id.* ¶ 117; Def.'s Stmt. ¶ 27. On February 19, the Plaintiff was tasked with organizing files in a file room in the basement of the Ford House Office Building "in close proximity to the office of Chief Hayleck." Harrison Decl. ¶ 117. That same day, the Plaintiff received four anonymous emails regarding job opportunities outside the Office of the Architect of the Capitol. *Id.* ¶ 119. The Plaintiff was subsequently temporarily assigned to a different branch of the Human Resources Management Division. *Id.* ¶ 118.

On or about March 9, 2009, the Plaintiff saw Mr. Hayleck in Ms. Tiscione's office, and "suffered an anxiety attack." Harrison Decl. ¶ 128. Less than two weeks later, the Plaintiff received two additional emails regarding job opportunities at different agencies. *Id.* ¶ 132. The Plaintiff's temporary assignment ended in June 2009, at which point she was reassigned to Mr. Hayleck's chain of command, but was furnished with a private office in another part of the building. Def.'s Stmt. ¶ 28. Mr. Hayleck resigned from the Defendant's employ in September 2009, at which point the Plaintiff returned to the main Training Branch office. *Id.* ¶ 29. The Plaintiff initiated this civil action on July 23, 2009.

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for

purposes of the motion only), admissions, interrogatory answers, or other materials); or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e). When considering a motion for summary judgment, the court may not make credibility determinations or weigh the evidence; the evidence must be analyzed in the light most favorable to the nonmoving party, with all justifiable inferences drawn in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "If material facts are at issue, or, though undisputed, are susceptible to divergent inferences, summary judgment is not available." *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009) (citation omitted).

The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The mere existence of a factual dispute, by itself, is insufficient to bar summary judgment. *See Liberty Lobby*, 477 U.S. at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. For a dispute about a material fact to be "genuine," there must be sufficient admissible evidence that a reasonable trier of fact could find for the nonmoving party. *Id.* The adverse party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute. *See Ass'n of Flight Attendants–CWA v. U.S. Dep't of Transp.*, 564 F.3d 462, 465–66 (D.C. Cir. 2009).

# III. DISCUSSION

The Congressional Accountability Act of 1995 extended the protections of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, to employees of the legislative branch. 2 U.S.C. § 1302(a)(2). Title VII prohibits an employer from "discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e– 2(a)(1). To that end, an employer may not create or condone a hostile or abusive work environment that is discriminatory. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64–65 (1986). When the alleged harasser is the employee's supervisor, the employer is vicariously liable to the employee. *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998).[4] In this circuit, a hostile work environment may amount to retaliation under Title VII. *Hussain v. Nicholson*, 435 F.3d 359, 366 (D.C. Cir. 2006). The Congressional Accountability Act further provides that it is unlawful "to intimidate, take reprisal against, or otherwise discriminate against, any covered employee because the covered employee has opposed any practice made unlawful by this chapter." 2 U.S.C. § 1317(a).

The Plaintiff's complaint alleges five separate claims of a hostile work environment: (a) hostile work environment based on the Plaintiff's gender (Count I); (b) hostile work environment in retaliation for protected activity under Title VII (Counts II & III); (c) hostile work environment in retaliation for Plaintiff's exercise of rights under the Family and Medical

---

[4] However, "[w]hen no tangible employment action is taken," the employer may raise an affirmative defense comprised of two elements: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998).

Leave Act ("FMLA") (Count IV); and (d) hostile work environment in retaliation for Plaintiff's

opposition to practices prohibited under the Occupational Safety and Health Act of 1970 (Count

V).  The Plaintiff does not suggest in her Complaint or in her opposition to the Defendant's

motion that she suffered any adverse employment actions on account of her gender or in

retaliation for protected activity or for taking FMLA leave.  The Court addresses the Plaintiff's

hostile work environment claims in the order presented in the Complaint.

   A.      *Count I: Hostile Work Environment Based on the Plaintiff's Gender*

   Initially, the Plaintiff alleges in Count I that she was subjected to a hostile work

environment on account her gender.  Specifically, the Plaintiff contends: (1) the August 6, 2008,

incident; (2) Mr. Hayleck's behavior toward the Plaintiff from August 23 until September 30,

2008; (3) the September 30, 2008, incident; (4) the processing of the Plaintiff's leave requests;

and (5) the "events" following the Plaintiff's return on February 19, 2009, constituted a hostile

work environment.  To establish a prima facie Title VII hostile work environment claim, the

Plaintiff must show: (1) she was a member of a protected class; (2) she was subjected to

unwelcome harassment; (3) the harassment occurred because of her protected status; and (4) the

harassment had the effect of unreasonably interfering with the plaintiff's work performance and

creating an intimidating, hostile, or offensive working environment.  *See Davis v. Coastal Int'l*

*Sec., Inc.*, 275 F.3d 1119, 1122-23 (D.C. Cir. 2002); *Curry v. District of Columbia*, 195 F.3d

654, 660 (D.C. Cir. 1999).  The third and fourth elements are the focus of the Defendant's

motion for summary judgment.

   A workplace becomes "hostile" for purposes of Title VII only if the allegedly offensive

conduct "permeate[s] [the workplace] with discriminatory [or retaliatory] intimidation, ridicule,

and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's

employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22 (1993) (citation omitted). This standard has both objective and subjective components: the work environment must be one that a reasonable person in the plaintiff's position would find hostile or abusive, and the plaintiff must actually perceive the environment to be hostile or abusive. *Id*. The objective prong requires the Court to evaluate the "the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (citing *Faragher*, 524 U.S. at 787–88). "[A] few isolated incidents of offensive conduct do not amount to actionable harassment." *Stewart v. Evans*, 275 F.3d 1126, 1134 (D.C. Cir. 2002).

As a threshold matter, the Plaintiff acknowledges that during the August 6 incident Mr. Hayleck was "enraged" by an email the Plaintiff sent to her third-line supervisor, David Ferguson. Harrison Decl. ¶¶ 3-4; Harrison Dep. 49:14-50:25; Def.'s Ex. A (8/7/08 Email S. Hayleck to Pl.). Mr. Hayleck was upset by an email the Plaintiff sent to an individual two levels above Mr. Hayleck in the chain of command without Mr. Hayleck's consent. As a result, Mr Hayleck shouted at the Plaintiff and waived a piece of paper at her. The Plaintiff suggests that Mr. Hayleck was motivated by the Plaintiff's gender because "[h]e would not have trapped a male in the desk that way," and "[h]e gets loud with the females, but doesn't say anything to the males," although the Plaintiff admits she has no knowledge as to whether or not Mr. Hayleck ever raised his voice towards male employees. Harrison Dep. 58:11-59:7. The Plaintiff's speculation aside, nothing in the record corroborates the Plaintiff's claim that Mr. Hayleck's behavior on August 6, 2008, was in anyway motivated by the Plaintiff's gender. *Stewart*, 275 F.3d at 1133. Thus, this incident is not relevant to the Plaintiff's hostile work environment

claim. Even if the Court were to consider this event, the acts about which the Plaintiff complains do not rise to the level of a hostile work environment.[5]

In addition to the August 6 incident, the Plaintiff argues Mr. Hayleck's treatment of the Plaintiff between August 23 and September 30, 2008, contributed to the allegedly hostile work environment. *See* Harrison Decl. ¶ 44. The Plaintiff asserts that Mr. Hayleck and a co-worker would not speak to her and only communicated by email, but at the same time the Plaintiff testified that she *preferred* that Mr. Hayleck only communicate with her via email. Harrison Dep. 81:20-22. The Plaintiff alleges she was not informed of any staff meetings, but there is no evidence that any staff meetings actually took place during the relevant time period. *Id.* 79:8-12. The Plaintiff contends the Mr. Hayleck required her to send him emails regarding her whereabouts and when certain forms needed his approval, but Mr. Hayleck subsequently discontinued this requirement. Harrison Decl. ¶ 43(f)-(m). Other than the email requirement, the only purportedly "harassing" conduct the Plaintiff identified between August 23 and September 30 is that the Plaintiff was required to keep a paper log of her whereabouts, and Mr. Hayleck would keep the door to his office closed when the Plaintiff's co-worker was out of the office. *Id.* ¶ 43(j), (k).

The Plaintiff does not articulate what conduct by the Defendant while the Plaintiff was on leave constituted part of the allegedly hostile work environment. On October 20, 2008, Mr.

---

[5] The Plaintiff's opposition emphasizes a report submitted by the Defendant in a related action. *Harrison v. Architect of the Capitol*, No. 11-420, Def.'s Mot. to Dismiss, ECF No. [10-8] (D.D.C. filed Apr. 26, 2011). The Court does not address the Plaintiff's request that the Court take judicial notice of the report because, even assuming the report constituted evidence gender bias generally (a generous assumption to say the least), nothing in the record suggests the August 6 incident was motivated by discriminatory animus as opposed to the Plaintiff's conduct. The Court addressed and rejected the Plaintiff's request for discovery regarding the report in a March 29, 2012 Memorandum Opinion & Order, ECF No. [45].

Hayleck sent the Plaintiff a letter indicating that the Plaintiff would be considered absent without official leave if she did not provide FMLA documentation. Harrison Decl. ¶ 64. The Plaintiff submitted the documentation the next day, and the Plaintiff was never placed on AWOL status. At best, the Plaintiff seems to argue that the fact Mr. Ferguson did not immediately grant certain requests for leave contributed to the hostile work environment. Harrison Dep. 83:14-25; 86:2-15. However, the Plaintiff offers no evidence to suggest Mr. Ferguson's conduct was in anyway motivated by the Plaintiff's gender. Ultimately all of the Plaintiff's requests for leave were granted. *Id*. at 86:23-87:1.

Following her return to work on February 19, the Plaintiff emphasizes that on the day of the 19th, Ms. Tiscione assigned the Plaintiff to work in the basement of the Ford House Office Building where she could have (but did not) see Mr. Hayleck. The Plaintiff was moved the basement the next day. The Plaintiff saw Mr. Hayleck in Ms. Tiscione's office on March 9. Mr. Hayleck looked at the Plaintiff, but did not say anything to her. Harrison Dep. 87:2-11. The Plaintiff alleges that she suffered an anxiety attack as a result of this interaction. *Id.* Finally, in February and March 2009, the Plaintiff received several anonymous emails regarding job opportunities with other federal agencies.

Though the Plaintiff evidently viewed her environment as hostile, objectively the events at issue, viewed together, were not so "severe" or "pervasive" to have changed the conditions of the Plaintiff's employment. There is no evidence that the Plaintiff suffered any "tangible workplace consequences," and the Plaintiff's assertion that she suffered severe "abuse" is undercut by the fact the Plaintiff had a *single* verbal conflict with Mr. Hayleck, which was clearly motivated by Mr. Hayleck's anger regarding an email the Plaintiff sent to a supervisor two levels above Mr. Hayleck in the chain of command, not the Plaintiff's gender. *Baloch*, 550

11

F.3d at 1201. Even if the Court were to construe the September 30 "incident" and March 9 interaction as clashes, the sporadic nature of the Plaintiff's alleged run-ins with Mr. Hayleck do not support the Plaintiff's claim that the hostile conduct was severe or pervasive. *Id.* Viewing the events in the light most favorable to the Plaintiff, no reasonable jury could find that the events "were sufficiently severe that [Plaintiff's] workplace was 'permeated with discriminatory intimidation, ridicule, and insult.'" *Nguyen v. Mabus*, 895 F. Supp. 2d 158, 190 (D.C. Cir. 2012) (quoting *Harris*, 510 U.S. at 21).

> B.      *Counts II, III, & IV: Retaliatory Hostile Work Environment*

Counts II and III of the Complaint are somewhat convoluted, but the Plaintiff appears to allege that the Defendant subjected the Plaintiff to a hostile work environment in retaliation for the Plaintiff reporting the August 6 incident to Ms. Tiscione. Similarly, the Plaintiff alleges in Count IV that she was subjected to a hostile work environment in retaliation for exercising her rights to take leave under the Family and Medical Leave Act, requests which were all ultimately granted. There is no evidence in the record to suggest Mr. Ferguson had any retaliatory motive in temporarily denying certain leave requests, in fact, there is no evidence that Mr. Ferguson was even aware of the Plaintiff's protected activity. Nor is there any evidence to suggest Ms. Tiscione's decision assigning the Plaintiff to the basement of the Ford House Office Building on February 19, 2009, was retaliatory in nature, be it for the Plaintiff's complaints regarding Mr. Hayleck or use of FMLA leave. Moreover, there is no evidence to suggest Mr. Hayleck's conduct was retaliatory; during the September 30 and March 9 incidents, Mr. Hayleck did not even speak to the Plaintiff. The Plaintiff does not even attempt to identify any evidence of retaliation in her opposition brief except to note that the Defendant was aware of the Plaintiff's protected activity. Pl.'s Opp'n at 41-42. Absent *any* evidence of a retaliatory motive, the

Defendant is entitled to summary judgment on Counts II, III, and IV. *See*, *e.g.*, *Ward v. District of Columbia,* --- F. Supp. 2d ---, 2013 WL 2897015, at * 7(D.D.C. June 14, 2013) ("[A]lthough the facial neutrality of an action does not necessarily bar a Title VII claim, the plaintiff must at least demonstrate that there is a factual basis for inferring that the incidents were motivated by a retaliatory animus.") (citation omitted). Assuming *arguendo* that the conduct of the Defendant's employees after August 13, 2008, and after the Plaintiff's leave was retaliatory, as outlined above that conduct falls far short of creating a hostile work environment.[6] No reasonable jury could conclude the Plaintiff was subject to a retaliatory hostile work environment.

### C.      Count V: OSHA-Based Retaliation

Count V of the Complaint alleges that the "unlawful retaliatory employment practices" set forth in the Complaint were based on "Plaintiff's opposition to the on going [sic] and continuing violent and unsafe work environment created by Defendant in violation of the Occupation[al] Safety and Health Act of 1970," primarily in connection with the August 6 incident. Compl. ¶ 188. "A civil action may be commenced by a covered employee only to seek redress for a violation for which the employee has completed counseling and mediation." 2 U.S.C. § 1408(a). The Defendant argues that the Plaintiff failed to comply with section 1408(a) because "[s]he nowhere alleges in her administrative complaint or in her supplement to it that she suffered retaliation for exercise of her OSHA rights." Def.'s Mot. at 22. To the contrary, the Plaintiff's March 5, 2009, supplement to her formal request for counseling explicitly invokes section 215 of the Congressional Accountability Act, 2 U.S.C. § 1341, which extends the provisions of the Occupational Safety and Health Act to the legislative branch. Count V of the

---

[6] The Plaintiff suggests, and the Defendant does not dispute, that the Court should use the standard set forth in *Harris v. Forklift Systems* to evaluate the Plaintiff's FMLA- and OSHA-based hostile work environment claims. Pl.'s Opp'n at 41.

Plaintiff's complaint could reasonably have been expected to be encompassed within an administrative investigation if one followed the Plaintiff's request for counseling, and thus was properly exhausted. *Park v. Howard Univ.*, 71 F.3d 904, 907 & n.1 (D.C. Cir. 1995).

Nevertheless, although the Court has jurisdiction to consider Count V, the Plaintiff once again offers no evidence to suggest that Mr. Hayleck, Ms. Tiscione, or Mr. Ferguson, took any action against the Plaintiff in retaliation for the Plaintiff opposing allegedly unlawful working conditions. Moreover, no reasonable jury could conclude that the Plaintiff was subjected to a hostile work environment. Therefore, the Defendant is entitled to summary judgment on this count.

### IV. CONCLUSION

For the foregoing reasons, the Court finds the Defendant is entitled to summary judgment on all counts. Taking the facts in the light most favorable to the Plaintiff, a reasonable jury could conclude that the Plaintiff did not get along with her first-line supervisor, but the conduct at issue does not approach the severity necessary to sustain a claim for a hostile work environment. Furthermore, the Plaintiff offers no evidence to suggest that any objectionable behavior she might have been subject to was motivated by a retaliatory animus. Accordingly, the Defendant's [32] Motion for Summary Judgment is GRANTED. An appropriate Order accompanies this Memorandum Opinion.

*/s/*
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE