UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SHARON M. HARRISON,

    Plaintiff,

       v.

OFFICE OF THE ARCHITECT OF THE
CAPITOL,

    Defendant.

Civil Action No. 09-1364 (CKK)

**MEMORANDUM OPINION**
(September 23, 2014)

Presently before the Court is Plaintiff's [50] Motion for Reconsideration of the Court's [47] Order, granting Defendant's Motion for Summary Judgment, and accompanying [48] Memorandum Opinion. Plaintiff argues that: (1) the Court erred by not considering the record from the instant matter and two subsequent cases filed by Plaintiff as a whole in reaching its holding; (2) the Court erred by failing to consider medical evidence presented by Plaintiff; and (3) the Court erred by applying case law related to Title VII claims to the instant action brought under the Congressional Accountability Act ("CAA"), 2 U.S.C. § 1301 *et seq.* Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court INCORPORATES as part of this opinion its reasoning as laid out in its [48] Memorandum Opinion, *see* 964 F. Supp. 2d 71 (D.D.C. 2013), and DENIES Plaintiff's motion for reconsideration for the foregoing reasons.

---

[1] The Court's decision is based on the record as a whole, but the Court's analysis focused on the following documents, listed in chronological order of filing: Pl.'s Mot. for Reconsideration ("Pl.'s Mot."), ECF No. [50]; Def.'s Memo. in Opp'n to Pl.'s Mot. for Reconsideration ("Def.'s Opp'n"), ECF No. [53]; Pl.'s Reply Mem. in Supp. of her Mot. for Reconsideration ("Pl.'s Reply"), ECF No. [54].

# I. BACKGROUND

The Court has detailed the underlying facts of this Motion in its previous opinion. *See Harrison v. Office of the Architect of the Capitol*, 964 F. Supp. 2d 71, 74-76 (D.D.C. 2013). The instant matter is based on events that occurred between August 6, 2008 and July 23, 2009. During all pertinent times, Plaintiff, Sharon Harrison, was employed by Defendant, the Architect of the Capitol. This action is the first of three lawsuits filed in this Court by the Plaintiff challenging various aspects of her employment with the Defendant. On July 23, 2009, Plaintiff filed the instant action ("*Harrison I*") against Defendant, alleging that Defendant unlawfully discriminated against her in violation of 2 U.S.C. § 1311(a)(1), and unlawfully retaliated against her in violation of 2 U.S.C. § 1317(a). On August 31, 2010, Plaintiff filed a subsequent action ("*Harrison II*") against Defendant, alleging that Defendant unlawfully retaliated against her in violation of 2 U.S.C. § 1317(a). *See* Civ. No. 10-1480 (CKK) ("*Harrison II*"). On February 23, 2011, Plaintiff filed a third action ("*Harrison III*") against Defendant, alleging that Defendant unlawfully retaliated against her in violation of 2 U.S.C. § 1317(a). *See* Civ. No. 11-420 (CKK) ("*Harrison III*"). By separate orders, the Court granted summary judgment in favor of Defendant in each of the three actions. *See Harrison I*, 964 F. Supp. 2d 71 (D.D.C. 2013); *Harrison II*, 964 F. Supp. 2d 81 (D.D.C. 2013); *Harrison III*, 985 F. Supp. 2d 13 (D.D.C. 2013).

In the instant action, the Court granted summary judgment in favor of Defendant on all five of Plaintiff's hostile work environment claims as follows: (a) hostile work environment based on Plaintiff's gender (Count I); (b) hostile work environment in retaliation for protected activity under Title VII (Counts II & III); (c) hostile work environment in retaliation for Plaintiff's exercise of rights under the Family Medical Leave Act ("FMLA") (Count IV); and (d) hostile work environment in retaliation for Plaintiff's opposition to practices prohibited under the

Occupational Safety and Health Act of 1970 ("OSHA") (Count V). *See generally Harrison I*, 964 F. Supp. 2d 71 (D.D.C. 2013).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 59(e) permits a party to file "[a] motion to alter or amend a judgment" within "28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). Motions under Rule 59(e) are "disfavored" and the moving party bears the burden of establishing "extraordinary circumstances" warranting relief from a final judgment. *Niedermeier v. Office of Baucus*, 153 F. Supp. 2d 23, 28 (D.D.C. 2001). Rule 59(e) motions are "discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (internal quotation marks omitted). Rule 59(e) does not provide a vehicle "to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (quoting 11 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 2810.1 (2d ed. 1995)).

## III. DISCUSSION

Plaintiff raises three objections to the Court's granting of summary judgment in favor of Defendant in the instant matter. First, Plaintiff argues that the Court should have considered the record in the instant matter coupled with the record in two matters subsequently filed by the Plaintiff against Defendant because the claims in each case were related. Second, Plaintiff argues that the Court should have considered medical evidence presented by Plaintiff in reaching its holding. Finally, Plaintiff alleges that the Court erred by applying case law related to Title VII claims to the instant action brought under the CAA. The Court shall address each argument

in turn.

   A. *Record in Plaintiff's Subsequently Filed Cases*

In order to understand the chronology of events, Plaintiff argues that the Court should have considered the record in the instant action as well as the records in *Harrison II* and *Harrison III* when evaluating whether Defendant engaged in unlawful discriminatory and retaliatory employment practices against her. Pl.'s Mot. at 2-4. Defendant rejects this argument, asserting that Plaintiff's position has "no legal support under Title VII." Def.'s Opp'n at 2 n.1. The Court shall deny Plaintiff's request for reconsideration on this issue for the reasons stated herein.

In *Harrison III*, the Court considered Plaintiff's argument that the events cited in all three actions should be considered in the aggregate when determining whether Plaintiff was subject to a retaliatory hostile work environment. *See Harrison III*, 985 F. Supp. 2d 13, 22 (D.D.C. 2013). Ultimately, after considering the incidents cited by Plaintiff in *Harrison I*, *II*, and *III*, the Court held that "no reasonable jury could conclude that the purportedly hostile actions, viewed as a whole, were sufficiently severe or pervasive so as to create a hostile work environment." *See id.* at 23. Plaintiff argues that the Court should have considered the events from *Harrison I* moving forward rather than from *Harrison III* looking backward. Pl.'s Mot. at 2-4. However, the Court notes that Plaintiff in the instant action made no effort to either amend the complaint or even raise the argument that the events of all three cases should be considered as a whole prior to the filing of her opposition to Defendant's Motion for Summary Judgment. Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 2-5. As the Court explained in *Harrison II*, "[t]hroughout her briefs, the Plaintiff attempts to add new claims and theories of retaliation not set forth in the Complaint. It is axiomatic that the Plaintiff cannot amend her Complaint by the briefs in support of or in

4

opposition to a motion for summary judgment . . . . Therefore, the Court addresses only those legal claims and materially adverse actions identified in the Complaint." *Harrison II*, 964 F. Supp. 2d 81, 95 n.4 (D.D.C. 2013) (citing *Arbitraje Casa De Cambio v. United States Postal Serv.*, 297 F. Supp. 2d 165 (D.D.C. 2003)). The Court follows this same logic in the instant matter. Accordingly, Plaintiff's request that the Court reconsider its ruling by examining the facts of all three cases as a whole, moving forward is denied.

### B. *Medical Evidence Presented by Plaintiff*

Next, Plaintiff argues that the Court failed to consider medical evidence that was relevant to its determination. On August 6, 2008, Plaintiff alleges that her supervisor, Stephen Hayleck, approached her desk and screamed at her while waving a piece of paper in her face because he was upset about an email that Plaintiff had sent to a third-line supervisor. Memo. Op. at 2.[2] Plaintiff asserts that the Court improperly rejected "uncontested and uncontroverted medical evidence and rationalized medical opinion evidence pursuant to examination, diagnosis and treatment of Plaintiff" related to the "August 6, 2008 assault on the Plaintiff and PTSD suffered thereafter." Pl.'s Mot. at 2. Plaintiff fails to cite to the specific medical evidence in question, however, a review of the record indicates that Plaintiff is referring to an exhibit filed alongside her opposition to Defendant's Motion for Summary Judgment. *See* Pl.'s Opp'n to Def.'s Mot. Summ. J., Ex. 4, ECF No. [37-5].

The Court finds that Plaintiff's medical evidence, related to her reaction to the cited events, does not provide a basis for the Court to reconsider its ruling on any of Plaintiff's hostile work environment claims. Notably, the Court held that Plaintiff failed to present a genuine issue

---

[2] A complete version of the facts related to the August 6, 2008, incident is contained in the Court's [48] Memorandum Opinion, on pages 2-3. *See also Harrison I*, 964 F. Supp. 2d 71, 74-75 (D.D.C. 2013).

of material fact as to whether the cited incidents were motivated by her gender, or by a retaliatory animus. *See generally Harrison I*, 964 F. Supp. 2d 71, 77-81 (D.D.C. 2013). The Court did not need to reach the issue of whether Plaintiff was subjected to a hostile work environment given the Court's finding that Plaintiff failed to make the requisite showing on an essential element of her claim, that Defendant's actions were motivated either by a discriminatory or a retaliatory animus. *See id.* at 77-78 (finding that there was no evidence to suggest that Defendant's conduct cited by Plaintiff was motivated by Plaintiff's gender); *id.* at 80 (granting summary judgment on the retaliation claims because of the absence of any evidence of a retaliatory motive). While the Court also noted that Plaintiff failed to establish that the cited behavior was sufficiently severe or pervasive to create a hostile working environment, Plaintiff's proffered medical evidence does not provide a basis to reconsider that finding. *Id.* at 81. Indeed, as the Supreme Court of the United States has stated:

> The effect on the employee's psychological well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive. But while psychological harm, like any other relevant factor, may be taken into account, no single factor is required. Plaintiff's own reaction to her work environment is one factor for the Court to consider in determining whether a work environment is hostile.

*Harris v. Forklift Sys.*, 510 U.S. 17, 23 (1993). Here, the Court held that there was no genuine issue of material fact as to whether Plaintiff's work environment was objectively hostile based on the evidence in the record. In reaching its ruling, the Court applied the proper legal standard and noted that "[t]hough the Plaintiff evidently viewed her environment as hostile, objectively the events at issue, viewed together, were not so 'severe' or 'pervasive' to have changed the conditions of the Plaintiff's employment . . . ." *Harrison I*, 964 F. Supp. 2d 71, 79 (D.D.C. 2013). Plaintiff's reaction to her work environment does not negate this finding. *Smith v.*

6

*Jackson*, 539 F. Supp. 2d 116, 138 n.21 (D.D.C. 2008) ("Plaintiff's subjective reaction would not transform a non-hostile work environment into an abusive one."). Accordingly, the Court shall deny Plaintiff's request for reconsideration on the basis that the Court failed to consider the medical evidence presented by Plaintiff.

### C. *Protection Provided Against Discrimination & Retaliation Under the CAA*

Finally, Plaintiff argues that the Court erred by applying case law related to the antidiscrimination and antiretaliation provisions of Title VII to the instant action because the CAA provides broader protection against discrimination and retaliation.[3] Pl.'s Mot. at 4-10. Plaintiff roots her argument in two sources: (1) the text of the CAA and Title VII; and (2) decisions of the Office of Compliance Board ("Board") related to CAA claims. *Id.* In contrast, Defendant argues that the Court's application of case law related to Title VII was appropriate because: (1) both the text of the statutes and precedent in this jurisdiction support the finding that the CAA incorporates Title VII and its underlying body of law; and (2) decisions by the Board are not binding on this Court. Def.'s Opp'n at 4-6. The Court finds that it did not err by applying Title VII precedents to the instant action for the reasons described herein.[4]

---

[3] While Plaintiff's claims are brought under the CAA provisions related to Title VII, FMLA, and OSHA, Plaintiff only specifically requests in her motion that the Court reconsider its application of the case law related to Title VII. While Plaintiff does note that the Board also found the antiretaliation provision of the CAA broader than that contained in OSHA, Pl.'s Mot. at 8, Plaintiff raises no specific objection to the Court's analysis of Count V. Accordingly, the Court shall only discuss its holding as it relates to the application of case law related to Title VII.

[4] The Court notes that Plaintiff's argument appears to center around what employment actions can give rise to a claim under the CAA. Notably, in the instant action, the Court held that Plaintiff failed to demonstrate a genuine issue of material fact as to whether the cited incidents were motivated by her gender, or by a retaliatory animus, s*ee generally Harrison I*, 964 F. Supp. 2d 71, 77-81 (D.D.C. 2013), and thus, a determination as to what incidents are actionable would not alter the Court's ruling on any of the counts in the complaint. However, because the Court also addressed Plaintiff's hostile work environment claim, the Court shall discuss Plaintiff's argument that it should reconsider the application of Title VII precedents in the instant matter.

Turning to Plaintiff's first argument, Plaintiff asserts that the statutory language itself justifies different standards for claims brought under the CAA and those brought under Title VII. Plaintiff argues that the statutory language of the CAA's antidiscrimination provision demonstrates that the protection is broader than that encompassed by Title VII. The relevant portion of the CAA provides: "All personnel actions affecting covered employees shall be made free from any discrimination based on . . . race, color, religion, sex, or national origin, within the meaning of section 703 of the Civil Rights Act of 1964 [Title VII]." 2 U.S.C. § 1311(a)(1). Title VII's antidiscrimination provision provides:

> It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or . . . to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a). Plaintiff argues that the reference in the CAA to "all personnel actions" covers a broader range of potential employment actions than Title VII which only provides relief from specific types of employment actions. Pl.'s Mot. at 7.

Plaintiff similarly argues that the antiretaliation provision of the CAA is broader than the analogous provision in Title VII. With regards to retaliation, the CAA provides:

> It shall be unlawful for an employing office to intimidate, take reprisal against, or otherwise discriminate against, any covered employee because the covered employee has opposed any practice made unlawful by this Act, or because the covered employee has initiated proceedings, made a charge, or testified, assisted, or participated in any manner in a hearing or other proceeding under this Act.

2 U.S.C. § 1317(a). Title VII also provides protection against retaliation, stating:

> It shall be an unlawful employment practice for an employer to discriminate

8

against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this title [Title VII] [], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title [Title VII] [].

42 U.S.C. § 2000e-3. Plaintiff argues that the inclusion of the word "intimidate" demonstrates that the antiretaliation provision, like the antidiscrimination provision, of the CAA covers against a broader range of employer activity. Pl.'s Mot. at 7-8. Defendant argues that the CAA explicitly applied eleven employment and workplace laws, including Title VII, to the legislative branch of the federal government and, thus, the case law interpreting Title VII is appropriately applied to actions brought under the CAA. Def.'s Opp'n at 4-5.

The Court finds Plaintiff's argument related to the statutory language unpersuasive. In *Newton v. Office of the Architect of the Capitol*, Judge Royce C. Lamberth held that Title VII case law applied to discrimination and retaliation claims brought under the CAA. 905 F. Supp. 2d 88 (D.D.C. 2012), *aff'd* No. 12-5145, 2012 WL 660367 (D.C. Cir. Dec. 6, 2012). In a detailed analysis, Judge Lamberth found that neither precedent in this jurisdiction nor statutory interpretation supported the plaintiff's claim that judicial interpretations of Title VII discrimination and retaliation claims were inappropriately applied to actions brought under the CAA. *Id.* at 92-93. Indeed, contrary to Plaintiff's argument, courts in this jurisdiction consistently have read the CAA to incorporate Title VII as well as other remedial federal statutes and, thus, have applied case law related to underlying remedial federal statutes, such as Title VII, in analyzing claims brought under both the antidiscrimination and antiretaliation provisions of the CAA. *See, e.g., Blackmon-Malloy v. United States Capitol Police Bd.*, 575 F.3d 699, 706

9

(D.C. Cir. 2009) (noting that "[t]he CAA incorporates much of Title VII's substantive law, but it establishes its own comprehensive administrative regime – including jurisdictional provisions"); *Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 492 (D.C. Cir. 2008) (noting that Title VII applies to offices of the legislative branch through the CAA and applying Title VII analysis to the plaintiff's discrimination claims); *Anyaso v. United States Capitol Police*, Civ. No. 12-1327, 2014 WL 1501242, at *4 & *8 (D.D.C. Apr. 7, 2014) (finding that courts analyze both discrimination and retaliation claims brought under the CAA using the same standards as claims brought under Title VII); *Gordon v. Office of the Architect of the Capitol*, 928 F. Supp. 2d 196, 206 (D.D.C. 2013) (holding that discrimination claims brought under the CAA are analyzed under the *McDonnell Douglas* framework); *Joyce v. Office of the Architect of the Capitol*, 966 F. Supp. 2d 15, 22 (D.D.C. 2013) ("In substance, . . . the Congressional Accountability Act expressly incorporates protections and remedies from the generally applicable federal antidiscrimination statutes . . . . Though retaliation under the CAA has no explicit tie to other statutes, . . . both parties agree — following D.C. Circuit *dicta* and district court holdings — that the framework for Title VII retaliation applies."); *Moran v. United States Capitol Police Bd.*, 887 F. Supp. 2d 23, 30 (D.D.C. 2012) ("Although the CAA contains its own retaliation provision, courts refer to the body of case law regarding discrimination under Title VII to evaluate claims of retaliation under the CAA."). Indeed, this Court addressed this issue in an earlier ruling and noted that, "[c]laims brought under the CAA are analyzed under Title VII's familiar framework and standards . . . . [and] [a]lthough the CAA includes its own anti-retaliation provision, *see* 2 U.S.C. § 1317(a), courts routinely rely upon Title VII case law when evaluating whether a challenged employment action is sufficiently adverse under the CAA's anti-retaliation provision." *Herbert v. Architect of the Capitol*, 839 F. Supp. 2d 284, 291 n.2 (D.D.C. 2012)

(internal citations omitted). Accordingly, the Court finds that Title VII analyses are properly applied to claims related to Title VII but brought through the CAA pursuant to the case law in this jurisdiction.

Turning to Plaintiff's second argument that this Court should follow the Board's interpretations of the antiretaliation provision of the CAA, the Court similarly finds that this argument is not persuasive. As the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") explained, "Congress extended the protections of Title VII of the Civil Rights Act of 1964, as well as ten other remedial federal statutes, to employees of the legislative branch" through the CAA. *Blackmon-Malloy v. United States Capitol Police Bd.*, 575 F.3d 699, 701 (D.C. Cir. 2009); *see also* 2 U.S.C. § 1302(a) ("The following laws shall apply, as prescribed by this Act, to the legislative branch of the Federal Government . . . Title VII of the Civil Rights Act of 1964 . . . ."). The D.C. Circuit noted that CAA sets up a three-step internal process, including counseling and mediation, for an aggrieved employee to follow. Upon completion of the three-step process, an employee may file a complaint either with the Office of Compliance Board or in district court. *Id.* at 701-02. However, as another judge in this district noted, Board decisions are not final because they are appealable to the Federal Circuit, making both complaints brought with the Office of Compliance and in district court ultimately subject to judicial review. *Newton v. Office of the Architect of the Capitol*, 905 F. Supp. 2d 88, 92 (D.D.C. 2012). Accordingly, the CAA "suggests judicial, not Board, primacy by providing that courts, rather than the Board, shall (if necessary) have the final word on all complaints." *Id.* at 92-93.

Plaintiff points to two Board decisions supporting her argument that the antiretaliation provision of the CAA should be read more broadly than that of Title VII. Pl.'s Mot. at 7-8 (citing *Solomon v. Office of the Architect of the Capitol*, Case No. 02-AC-62 (RP) (Office of

11

Compliance Dec. 7, 2005) (Decision of Bd. of Dir.), http://www.compliance.gov/wp-content/uploads/2010/03/solomon_12-07-05.pdf; *Britton v. Office of the Architect of the Capitol*, Case No. 08-AC-20 (CV, RP) (Office of Compliance May 23, 2005) (Decision of Bd. of Dir.), http://www.compliance.gov/wp-content/uploads/2010/03/britton_05-23-05.pdf). Contrary to Plaintiff's assertion that the CAA provides broader protection than Title VII, in *Britton v. Office of the Architect of the Capitol*, a case cited approvingly by Plaintiff, the Board found that a Title VII-based approach to claims brought under the CAA was appropriate. *Britton*, Case No. 08-AC-20 (CV, RP), at 7. Accordingly, the cited Board opinion supports, rather than refutes that appropriateness of applying Title VII standards to actions brought under the CAA. The Board in *Britton* considered the varying approaches to Title VII adopted by different circuits to determine what employment actions should be actionable under the CAA. Ultimately, the Board rejected the D.C. Circuit's approach and adopted the broader approach of other circuits, including the Ninth Circuit. *Id.* at 7-9. As a result, the Board found actionable under the CAA "any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter a charging party or others from engaging in protected activity." *Id.* at 8 (quoting *Ray v. Henderson*, 217 F.3d 1234, 1240-43 (9th Cir. 2000)). However, given the "judicial primacy" embodied in the CAA, the Court is unpersuaded that it should follow the Board's adoption of the Ninth Circuit's interpretation of Title VII over binding precedent interpreting Title VII. Notably, there is no Federal Circuit opinion that adopts the Board's approach.[5] Most importantly, after the cited

---

[5] Plaintiff cites to one Federal Circuit opinion in her reply, *Duncan v. Office of the Architect*, 541 F.3d 1377 (Fed. Cir. 2008). Pl.'s Reply at 6. In *Duncan*, the Federal Circuit held that the plaintiff could bring an OSHA-related retaliation claim before the Board through the CAA. *Id.* at 1380. However, the Federal Circuit in *Duncan* did not adopt the Board's standard for a retaliation claim under the CAA. Rather, the court noted that the Board applied the "reasonably likely" standard, *id.* at 1379, but ultimately the court upheld the Board's ruling in

Board decisions, the Supreme Court of the United States expressly adopted the D.C. Circuit's interpretation of the antiretaliation provision of Title VII over those employed by other circuits, including the one adopted by the Board, in *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53 (2006). *Id.* at 67-68. Indeed, the Supreme Court held: "In our view, plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (internal quotations omitted). Therefore, the Board decisions Plaintiff cites rely on Title VII precedent that has been overruled by the Supreme Court.

Accordingly, the Court is not persuaded that either the language of the CAA itself or the decisions handed down by the Office of Compliance Board require the Court to reconsider its earlier ruling. Rather, relying on the body of case law in this jurisdiction and Supreme Court precedent, the Court concludes that it did not err in applying precedents from Title VII to Plaintiff's claims in the instant action and, thus, Plaintiff's request for reconsideration on this issue is denied.

**D.** *Arguments Raised in Plaintiff's Reply*

Finally, Plaintiff raises new arguments in her reply that have not been raised in her initial motion for reconsideration. Plaintiff argues that her five claims of hostile work environment constitute the social sciences' definition of "workplace mobbing" and "workplace bullying" and, thus, should be actionable under the CAA. Pl.'s Reply at 1-4. The arguments Plaintiff raises for the first time in her reply are forfeited because it leaves Defendant with no opportunity to

---

favor of the defendant because the plaintiff failed to meet the causation requirement of his claim. *Id.* at 1380.

respond. *See, e.g., McBride v. Merrell Dow & Pharm.*, 800 F.2d 1208, 1211 (D.C. Cir. 1986) ("Considering an argument advanced for the first time in a reply brief . . . is not only unfair to [a defendant], but also entails the risk of an improvident or ill-advised opinion on the legal issues tendered." (citation omitted)); *Conservation Force v. Salazar*, 916 F. Supp. 2d 15, 22 (D.D.C. 2013), *aff'd* 699 F.3d 538 (D.C. Cir. 2012) (forfeiting an argument made for the first time in a reply brief); *see also Jones v. Mukasey*, 565 F. Supp. 2d 68, 81 (D.D.C. 2008) (holding that D.C. precedent consistently submits that courts should not address arguments raised for the first time in a party's reply). Even if the Court were to consider the arguments, the Court notes that Plaintiff has not established that the cited conduct rises to the level of "workplace mobbing" and "workplace bullying" based on the definitions provided in Plaintiff's reply. *See id.* at 2 (identifying the four phases on "mobbing syndrome" as the critical incident, mobbing and stigmatizing, personnel administration, and expulsion); *id.* at 3 (listing among the ten distinctive factors of "mobbing syndrome," "[o]curring in a continual, multiple and systematic fashion, over some time," "[p]ortraying the victimized person as being at fault," "[e]ngineering to discredit, confuse, intimidate, isolate, and force the person into submission," "committed with the intent to force the person out," and "[r]epresenting the removal from the workplace as the victim's choice"). Further, the Court notes that it applied the appropriate legal, rather than social science, standards to each of Plaintiff's claims. Accordingly, the Court shall not reconsider its holding based on Plaintiff's argument in her reply brief that she was subjected to "workplace mobbing" and "workplace bullying" within the social sciences' definitions of the terms and, thus, has an actionable claim.

## IV. CONCLUSION

For the reasons outlined above, the Court DENIES Plaintiff's [50] Motion for

Reconsideration. The Court further INCORPORATES as part of this opinion its reasoning as laid out in its [48] Memorandum Opinion, *see* 964 F. Supp. 2d 71 (D.D.C. 2013). This case remains dismissed. An appropriate Order accompanies this Memorandum Opinion.

                                                           */s/*
                                        **COLLEEN KOLLAR-KOTELLY**
                                        UNITED STATES DISTRICT JUDGE